ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHRISTOFFER LEE (CABN 280360)
DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
christoffer.lee@usdoj.gov
daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARCO ABRAHAM URBINA,<br><br>Defendant. | Case No. CR 21-00347 YGR<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: June 1, 2023<br>Time: 9:00 a.m.<br>Ctrm: 1, 4th Floor<br>Judge: The Honorable Yvonne Gonzalez Rogers |

## I. SYNOPSIS

The United States respectfully submits this Sentencing Memorandum for defendant Marco Urbina. He has pleaded guilty to a single count of violating 18 U.S.C. § 922(g)(1)—Felon in Possession of a Firearm and Ammunition—for possessing a loaded, 9 mm pistol in the course of selling it for $750. Per the guidelines, Mr. Urbina's offense level is 17 and his criminal history category is IV, for a guidelines range of 37-46. The government and Mr. Urbina entered into a plea agreement under Fed. R. Crim. Proc. 11(c)(1)(B), wherein the government agreed to recommend a sentence of 15 months imprisonment pursuant to 18 U.S.C. § 3553(a). The government does so here.

## II. BACKGROUND ON DEFENDANT URBINA

Mr. Urbina is 29-years old. He has had several stints in county jail since he was 19; the longest was 171 actual days, for 341 days credit under California law. As self-reported in the Presentence Investigation Report, Mr. Urbina attributes much of his criminal conduct to using marijuana from an early age, and as a result of his older brother (who is a co-defendant in the instant case) being a poor role model. Yet Mr. Urbina appears to trivialize his criminal conduct because marijuana use is now legal, and unlawful sale is only a misdemeanor, under California law. The offense conduct and his criminal history and characteristics call for graduated sentence such as the 15 months of imprisonment the government here recommends.

In 2012, while 19-years old, he was convicted of a felony for carrying a loaded firearm in public with a gang enhancement. He admitted to the loaded .38 caliber pistol being in his possession; there also was marijuana in the car while driving around with his friends in a rival gang area. He now denies involvement in a gang and claims that he took a deal to end the case.

In 2015, while 22-years old, Mr. Urbina was convicted of a felony for possessing marijuana for sale—he was on probation at the time of that offense. Again, he now appears to trivialize this conviction by noting that it has since been reduced to a misdemeanor.

Just last December (2022), Mr. Urbina was convicted of possession of cocaine and marijuana for sale. During a search warrant execution of a residence in South San Jose, where he resided with his brother, Max Urbina (his co-defendant in both this and that case), law enforcement recovered approximately 14 pounds of marijuana, 2.78 pounds of cocaine (individually packaged), 3/4 pound of suspected Oxycodone and Xanax pills, metal knuckles, several scales and resealable bags, and a THC extraction lab with butane. Pursuant to a search warrant, officers searched Marco Urbina's car; in it, officers found approximately 5 pounds of marijuana and a backpack containing $14,199 of US currency ($14,000 bundled in seven $2000 rolls of $20 bills and the remainder in smaller denominations). In sum, Mr. Urbina was part of a large drug manufacturing and distribution operation, including THC extraction from marijuana using butane gas. That is a very dangerous process that can cause explosions and fires that severely burn the persons involved, destroy homes, and put an entire neighborhood at risk. (See https://www.reuters.com/article/us-usa-drugs-insight/exploding-danger-u-s-marijuana-oil-labs-

pose-deadly-destructive-hazard-idUSKCN1T51F4.)

## III. OFFENSE CONDUCT

On May 4, 2017, Mr. Urbina possessed and then sold a 9mm Smith & Wesson semi-automatic pistol (pictured here) loaded with eight rounds of 9mm ammunition for $750. Mr. Urbina also arranged the sale of an A.A. Arms, Inc. model AP 9 pistol for $1,000 that his brother, Max Urbina sold on April 27, 2017. The specific facts of his possession, restated from the parties' plea agreement, are as follows:



Specifically, on May 4, 2017, in the early afternoon, a confidential human source (CHS) called unindicted co-conspirator 1 (UCC1) to arrange CHS's in-person purchase of a 9mm firearm for $750 from me, a sale which UCC1 had brokered.

CHS gave UCC1 $900 cash—$750 for the gun and $150 for UCC1 to keep. UCC1 then called Mr. Urbina to advise him that UCC1 and CHS were in the church parking lot. Mr. Urbina told UCC1 that his girlfriend took his car and asked that they should come to where Mr. Urbina was in San Jose. He then texted the address to UCC1.

Later that day, UCC1 and CHS arrived at the address Mr. Urbina sent by text. Mr. Urbina met them on the street and then entered the CHS's car along with UCC1. While in the car, Mr. Urbina possessed and removed from the back of his waistband a 9mm Smith and Wesson 5906 pistol, serial number VBK9947, loaded with 8 rounds of 9mm Blazer ammunition in the magazine. He handed the Smith and Wesson pistol, loaded with the ammunition, to CHS. While still in CHS's car, UCC1 gave Mr. Urbina $750 cash, and Mr. Urbina counted it twice. Mr. Urbina then gave UCC1 $50 cash. CHS told Mr. Urbina to let CHS know when Mr. Urbina as to when Mr. Urbina gets more guns, and they discussed future potential sales. Mr. Urbina left CHS's vehicle, and then CHS and UCC1 drove away.

Mr. Urbina was a felon at the time because he had been previously convicted of crimes

punishable by imprisonment for a term exceeding one year as described in the prior section.

## IV. DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT'S SENTENCING GUIDELINES CALCULATION LACK MERIT

Because it was subsequently reclassified to a misdemeanor pursuant to California's Proposition 64, Mr. Urbina might assert that his felony conviction for Cal. Health & Safety Code § 11359 (Possession of Marijuana for Sale) in Santa Clara County Superior Court No. C1526414 should not either (1) qualify as a prior felony controlled substance conviction that results in a base offense level per U.S.S.G. §2K2.1 or (2) be afforded 2 criminal history points per U.S.S.G §4A1.1(b) even though Mr. Urbina spent 171 days in actual custody for that offense. As explained below, the Ninth Circuit and many of its district courts have already held that such reclassification under California law is inconsequential to these types of guidelines determinations.

In the seminal case on this issue, *United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016), the Ninth Circuit held that a state's retroactive adjustment of penalties does not "rewrite history for purposes of the administration of the federal criminal law." *Id*. at 972. While that the reclassification of a felony to a misdemeanor in *Diaz* was pursuant to California's Proposition 47, that is a difference with a distinction. In *United States v. Tones*, 759 F. App'x 579 (9th Cir. 2018), the Ninth Circuit cited to *Diaz* in rejecting the argument that reclassification of a prior § 11359 marijuana offense as misdemeanor pursuant to Proposition 64 rendered that conviction a non-qualifying predicate for purposes of being a controlled substance conviction that resulted in the defendant being a career criminal per U.S.S.G. §4B1.2. *Id*. at 790. The court's opinion in *Prado v. Barr*, 949 F.3d 438 (9th Cir. 2020) is also instructive because it considered the effects of Proposition 64 on subsequent federal proceedings, albeit in a different context. *Id*. at 442. Prado argued that her reduced § 11359 conviction no longer qualified as an aggravated felony under federal immigration law. *Id*. at 441. The Ninth Circuit rejected that claim, finding that Proposition 64 merely reclassified Prado's conviction "for policy reasons of rehabilitation, rather than because it was substantively or procedurally flawed." *Id*. The court considered Proposition 64's political history, including statements about its intended purpose made in the official voter guide and by then Lieutenant Governor Gavin Newsom. *Id*. The court then concluded that Proposition 64 reclassifications were intended to "reduce the ongoing negative effects" of § 11359 convictions for

"rehabilitative purposes," not to expunge them entirely. *See id.* at 442. The court noted that Proposition 64 did not eliminate the criminal or civil consequences associated with such convictions. *Id*. Instead, Proposition 64 merely reclassified them as lesser crimes with lower sentences. *Id*.

Given this well-established law, district courts in this circuit have followed suit without reservation. Most pertinent is this Court's rejection of the very argument Mr. Urbina might make here. *See United States v. Nguyen*, No. 20-CR-00112-BLF-1, 2022 WL 4241655, at *1-*2 (N.D. Cal. Sept. 14, 2022) (Freeman, J.), *appeal filed*. Other district courts have likewise rejected the import of Proposition 64 on guidelines calculations. *See, e.g.*, *United States v. Ochoa-Garcia*, No. 3:97-CR-00077-RCJ-VPC-3, 2017 WL 4532489, at *2-*3 (D. Nev. Oct. 10, 2017); *United States v. Cortez*, No. 2:95-CR-0020-WBS-KJN, 2021 WL 3165038, at *3 (E.D. Cal. July 27, 2021) (collecting cases).

Of note, the guidelines provide guidance explaining why Mr. Urbina is incorrect as to the effect of rehabilitative reclassifications like Proposition 64. U.S.S.G. §2K2.1, which controls Mr. Urbina's case, instructs that a "prior felony conviction" is defined as any felony that receives criminal history points under § 4A1.1(a), (b), or (c). *See* U.S.S.G. §2K2.1, cmt. n.10. Section 4A1.2 contains definitions and instructions regarding the counting of convictions under §4A1.1. Application Note 10 to §4A1.2 (Definitions and Instructions for Computing Criminal History) instructs:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted.

U.S.S.G. § 4A1.2, cmt. n.10.

To the extent Mr. Urbina points to the parties' Plea Agreement as suggesting that his offense level is 17, then that is inconsequential. The agreement states that Mr. Urbina understood that "the Court is not bound by the Guidelines calculations [within it]; the Court may conclude that a higher Guidelines range applies to [him], and, if it does, [he] will not be entitled, nor will [he] ask, to withdraw [his] guilty plea. ECF 37 ¶ 7. This Court also admonished Mr. Urbina of this at the time it took Mr. Urbina's guilty plea. Admittedly, the government miscalculated the offense level as stated in that agreement and regrets the error. But that is not a basis for the Court to ignore the correct offense level

as stated in the Presentence Investigation Report. Importantly, the government's recommendation of 15 months imprisonment—which the government is adhering to here—was not premised on the guidelines calculation in the plea agreement.

## V. SENTENCING RECOMMENDATION

The government recommends that the Court sentence Mr. Urbina to 15 months imprisonment and will not oppose a request by Mr. Urbina that the sentence imposed in the instant case be run concurrent to the sentence to be imposed in his pending Santa Clara County case (No. 2106566), to which he has plead but not yet been sentenced. Considering the factors set forth in 18 U.S.C. § 3553(a), the government believes this proposed sentence is sufficient, but not greater than necessary, to fulfill the needs of sentencing. First, Mr. Urbina's crime is serious: he sold a loaded firearm while being a felon. 18 U.S.C. § 3553(a)(2)(A). And while that happened in 2017, the recommendation reflects Mr. Urbina's continued criminal conduct since. 18 U.S.C. § 3553(a)(1). At the same time, Mr. Urbina has spent less than a year in jail, and the recommended sentence reflects more than two times the length of that sentence in actual custody when accounting for good time credits. The recommended incarceration should serve a deterrent effect not only on Mr. Urbina, but also on others who may view their prohibition on firearms possession as a mere suggestion that has no real consequences in state court. 18 U.S.C. § 3553(a)(2)(B). The government also is mindful of Mr. Urbina's circumstances and characteristics, which include poor judgment from marijuana use and seemingly being influenced by his older brother—who has been a participant in the offense charged in this case and Mr. Urbina's most recent state court case. 18 U.S.C. § 3553(a)(1). While this does not absolve Mr. Urbina of responsibility for his conduct, it cannot be ignored that Mr. Urbina's substance abuse and following the wrong path of his brother have had major roles in where he is now today. Those facts are mitigators that warrant the punishment recommended.

DATED: May 25, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
DANIEL N. KASSABIAN
Assistant United States Attorney
2093-6594-2272, v. 1